**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

YASMIN KLENE,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Defendants.

Case No. 2:26-cv-03266-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Yasmin Klene's First Amended Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 12). Through it, Ms. Klene argues that her ongoing detention is unlawful because her removal from the United States is not reasonably foreseeable. Also before the Court is Ms. Klene's Motion for a Temporary Restraining Order ("TRO") (ECF No. 13). For the following reasons, the Court awards Ms. Klene a writ of habeas corpus and denies her motion for a TRO as moot.

## I. PROCEDURAL HISTORY

On October 5, 2026, Petitioner Yasmin Klene filed a verified *pro se* petition for writ of habeas corpus. See ECF No. 1-1. The next day, the Court appointed the Federal Public Defender ("FPD") to represent her. See ECF No. 3.

On October 28, 2026, Ms. Klene filed the instant Amended Petition for Writ of Habeas Corpus. See Am. Pet. for Writ of Habeas Corpus, ECF No. 12 [hereinafter "Pet."]. Simultaneously, Ms. Klene filed her Motion for Temporary Restraining Order. See ECF No. 13. Through them, Ms. Klene challenges her ongoing detention at the hands of Respondents, as well as the procedures undergirding her potential removal to an undesignated third country. See ECF Nos. 12, 13.

Respondents filed a return on November 3, 2026[1], see Fed. Resp'ts' Return, ECF No. 14 (November 3, 2026) [hereinafter, "Return"], and Petitioner replied on November 4, 2026. The Court's Order on Ms. Klene's Petition follows below.

## II. JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to non-citizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curium) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention...."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a

[1] The document filed by Respondents on November 3, 2026, is virtually identical to the ones filed on October 9, 2026. It does not raise any new or responsive arguments to the First Amended Petition. Compare ECF No. 8 with ECF No. 14.

court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause—i.e., to "make a return certifying the true cause of [] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondents should also be accepted as true unless they are contradicted by relevant evidence. See id. To reach the truth of these matters, district courts "may fashion appropriate modes of procedure" to "summarily hear and determine the facts[] and dispose of the matter as law and justice require." Harris, 394 U.S. at 299 (quoting 28 U.S.C. § 2243) (quotation marks omitted). In fact, it is "the inescapable obligation of the courts" to vindicate their "habeas corpus jurisdiction" by fashioning "methods for securing facts where necessary." Id.

## III. FACTUAL BACKGROUND

As a preliminary matter, the Court makes the following findings of fact based on the Parties' undisputed factual allegations and the evidence they supply. See *supra* Part II (describing the fact-finding process in habeas proceedings).

Ms. Klene is a citizen of Iran. See Pet. at 3. Ms. Klene has resided in the United States for several decades. In 2011, Ms. Klene lost her green card and was ordered removed. After the entry of that removal order, she spent approximately 86 days in immigration custody and was released on supervision. See ECF No. 8-1 at 8; Pet. at 4.

On March 26, 2026, Ms. Klene was arrested by Immigration and Customs Enforcement ("ICE"). See id. Ms. Klene has remained in ICE custody since then. As of the date of this Order's entry, November 5, 2026, Ms. Klene has spent 310 days in immigration detention over a span of 15 years after her removal order became final.

## IV. LEGAL STANDARD

By way of background, the INA provides a "complex statutory framework of detention

authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four provisions empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). Here, Respondents invoke 8 U.S.C. § 1231 to justify Ms. Klene's detention. See Return at 1. Therefore, 8 U.S.C. § 1231 is the only statutory provision relevant to this case.

### A. Section 1231(a)

8 U.S.C. § 1231 governs the detention of non-citizens who are subject to final orders of removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order). When a non-citizen "is ordered removed, [DHS] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this period, "detention is mandatory." Id. (citing § 1231(a)(2)). A non-citizen's removal period begins on the latest of three dates: (i.) when their removal order becomes administratively final; (ii.) when a court that stayed deportation enters a final order regarding deportation; or (iii.) when they are released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8 U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Pursuant to § 1231(a)(6), DHS may continue to detain a non-citizen who is: (i.) inadmissible; (ii.) removable under certain provisions of § 1227(a); (iii.) a risk to the community; or (iv.) unlikely to comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)). "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

Once a non-citizen enters the post-removal period, they are subject to detention insofar as their deportation is reasonably foreseeable. As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). But a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat." Zadvydas, 533 U.S. at 699 (citation omitted). Accordingly, the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 594 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Zadvydas Court also found it "practically necessary to recognize some presumptively reasonable period of detention… to guide lower court determinations," settling on a presumptively reasonable period spanning more than 90 days, but not "more than six months." Zadvydas, 533 U.S. at 701. The clock for this presumptively reasonable period does not reset when a non-citizen is released from detention and re-detained. See Nguyen v. Scott, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) (citation omitted) (Surely, "under the reasoning of Zadvydas, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six month intervals."); see also Jiang v. Genalo, No. 26-CV-2402 (AMD), 2026 WL 1413915, at *4 (E.D.N.Y. May 20, 2026) (collecting cases).

In practice, this means that DHS can presumptively detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). "After that point, if the [non-citizen] 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the [g]overnment must either rebut that showing or release the [non-citizen]." Guzman Chavez, 594 U.S. at 529 (citation omitted) (quoting Zadvydas, 533 U.S. at 701).

In short, post-removal-period detention violates the INA and the Constitution when a non-citizen's removal is not reasonably foreseeable. Cf. Arteaga-Martinez, 596 U.S. at 579 (citation omitted) (reaffirming that Zadvydas construed 8 U.S.C. § 1231 "in light of the Constitution's

demands.”).

**B. Withholding-only Proceedings and Third-Country Removal**

Concurrent to removal proceedings, non-citizens are also entitled to seek various protections, including, *inter alia*, asylum, statutory withholding of removal, and withholding of removal under regulations implementing the Convention Against Torture (“CAT”). See 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary, but others, like withholding of removal pursuant to CAT protections, are mandatory, meaning that the protection must be afforded if the conditions are met. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; see also Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013) (“[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections].”); Gutierrez-Alm v. Garland, 62 F.4th 1186, 1200–01 (9th Cir. 2023) (“The Convention Against Torture provides mandatory relief for any immigrant who can demonstrate that ‘it is more likely than not that he or she would be tortured if removed to the proposed country of removal.’”) (quoting Hamoui v. Ashcroft, 389 F.3d 821, 826 (9th Cir. 2004)). Pursuant to the regulations implementing CAT, once a non-citizen seeking withholding of removal makes a showing of reasonable fear of persecution or torture should they be removed to a country, that non-citizen is placed in “withholding-only proceedings” before an immigration judge exclusively to seek withholding or deferral of removal. 8 C.F.R. §§ 208.31(b), (e); see also 8 C.F.R. § 1208.2(c)(3)(i) (“The scope of review in [withholding-only] proceedings… shall be limited to a determination of whether the [non-citizen] is eligible for withholding or deferral of removal.”). “When a [non-citizen] applies for withholding-only relief, he does so as to a particular country.” Guzman Chavez, 594 U.S. at 535–36. It follows that an order granting CAT relief only prohibits the non-citizen’s removal to that particular country; the non-citizen still “‘may be removed at any time to another country where he or she is not likely to be tortured.’” Nasrallah, 590 U.S. at 582 (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)).

“Because the removal proceedings happen on one track, while withholding and CAT proceedings happen on another track, a situation may arise where the Government has an order of removal but no country that an IJ has authorized for that removal.” Cavieres Gomez v. Mattos,

817 F. Supp. 3d 1002, 1007 (D. Nev. 2025). In instances where the government cannot remove a non-citizen to the country listed on that individual's removal order, including, *inter alia*, instances where a grant of withholding bars removal of the non-citizen to said country, the government is permitted to remove the individual to any country that will accept them. See 8 U.S.C. § 1231(b)(2)(E)(vii). These kinds of removals are known as "third-country removals."

Third-country removals are subject to the same protections mandated for removal or withholding-only proceedings. Specifically, the INA bars deportation to countries in which the non-citizens would face persecution or torture. See 8 U.S.C. § 1231(b)(3)(A) ("Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a non-citizen] to a country if the Attorney General decides that the [non-citizen's] life or freedom would be threatened in that country because of the [non-citizen's] race, religion, nationality, membership in a particular social group, or political opinion.").

## V. DISCUSSION

Respondents assert that Ms. Klene's detention is governed by 8 U.S.C. § 1231 because she is subject to a final order of removal from November 16, 2011. See Return at 1. Respondents also state, without justifying, that Petitioner is within the 90 days of the date of the reinstatement of the prior final order of removal. Id.

Respondents have not demonstrated a significant likelihood of removal in the foreseeable future, given that Ms. Klene was released on supervision 15 years ago, and has since remained in the country after her 90-day removal period ended. Indeed, Federal Respondents provided no information to this Court regarding details of any possible removal. For these reasons, as explained in more depth below, the Court finds Ms. Klene is being held in violation of the INA and her due process rights under the Fifth Amendment.

### A. Due Process and INA Challenges to Detention

First, the Court considers whether Petitioner is subject to mandatory detention pursuant to § 1231(a). She is not.

Respondents rely on Ms. Klene's order of removal from November 16, 2011. See Return

at 1; ECF No. 8-1 at 4–5. Assuming, *arguendo*, Ms. Klene's removal order was final on November 16, 2011, her 90-day removal period ended on February 14, 2012.[2] As soon as it did, Ms. Klene entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement. See 8 U.S.C. § 1231(a)(3); Arteaga-Martinez, 596 U.S. at 578–79 (citations omitted). Because Ms. Klene is within the post-removal period, the Court must decide whether her ongoing detention is reasonable. It is not.

*i. Presumption of Reasonability*

Ms. Klene's detention is not presumptively reasonable. As noted, it is presumptively reasonable for DHS to detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001); see also L.R. v. Noem, 826 F. Supp. 3d 1252, 1269 (D. Nev. 2026).

Ms. Klene's final order of removal is over 15 years old, and her statutory removal period has passed. Since her arrest in March 26, 2026, alone, Ms. Klene has spent over six months in detention. Therefore, her ongoing detention exceeds the bounds of that which is presumptively permissible under the INA and the Constitution. See Zadvydas, 533 U.S. at 701.

*ii. Foreseeability of Removal*

After a non-citizen has been in detention for six months post-removal order, they need only provide a "good reason to believe" that their removal cannot occur in the reasonably foreseeable future to be granted relief under Zadvydas. 533 U.S. at 702. If the non-citizen makes that showing, the burden shifts, and the government then bears the burden of proof to show that the continued detention is reasonable. See id. To prove reasonableness under this prong, the government must prove that removal is likely to occur within the reasonably foreseeable future. See id. In instances of third country removal, this Court has found that removal cannot be deemed as likely to occur in the reasonably foreseeable future if the government cannot identify a country that will accept the

[2] Even assuming the clock restarted during Ms. Klene's instant detention, she has been detained for over six months since March 26, 2026. Thus, even if the clock restarted, Respondents are not entitled to the presumption of reasonability, and the Court finds that, because Ms. Klene's removal is not reasonably foreseeable, her continued post-removal detention violates due process. See *infra*.

non-citizen. Cavieres Gomez, 817 F. Supp. 3d at 1011–13.

In Cavieres Gomez, the Court adopted a three-step framework to determine whether a petitioner was likely to be removed in accordance with the Zadvydas standard, looking to the following factors: (1) whether the petitioner could be removed to his country of origin; (2) whether he was a citizen of another country; and (3) whether the government had identified a third country that would accept him. See id. at 1011–12 (citing to Trejo v. Warden of ERO El Paso East Montana, 807 F. Supp. 3d 697, 705–07 (W.D. Tex. 2025)).

Here, the Court finds that Petitioner has shown that her removal is not reasonably foreseeable. To start, Ms. Klene was ordered removed 15 years ago. Despite an abundance of time, ICE has been unable or unwilling to effectuate her removal from the United States. Ms. Klene cannot be removed to her native country of Iran, as that country and the United States are in a state of armed conflict. See Pet. at 12.

The burden thus shifts to Respondents to rebut this showing. However, Respondents are utterly nonresponsive to Petitioner's argument. Rather, in their return, Respondents make the conclusory assertion that Petitioner is within the 90-day removal period, and does not address the possibility of prolonged detention. Respondents fail to provide the Court with any evidence, information, explanation as to why Ms. Klene's detention does not present constitutional issues, or why 15 years has been an insufficient amount of time for ICE to facilitate Ms. Klene's removal. See generally Return. To date, Respondents have not provided any evidence that they sought acceptance from any other receiving countries, created travel documents, or made any travel arrangements at all for Ms. Klene. See Pet. at 14. Respondents have thus left Ms. Klene in a "removable-but-unremovable limbo." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347 (2005).

Petitioner should not be "burdened by the impossible task of imagining and refuting [the] causes" of her detention. See Carlson, 186 F.2d at 188. "The imagination can hardly create a situation more incompatible with the spirit of our institutions that [ ] civil official[ls'] completely secret viewpoint[s] could be the basis of sustained imprisonment." Id. at 189. Respondents' "long and inadequately explained delay[ ]" in providing any justification for Petitioner's ongoing

detention necessarily raises the presumption that she "is being illegally confined." Ruiz v. Cady, 660 F.2d 337, 340 (7th Cir. 1981) (citation omitted) (cited approvingly in Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990)). This presumption only bolsters the Court's conclusion that Respondents have failed to justify Petitioner's detention by demonstrating that her removal is, in fact, reasonably foreseeable.

Thus, on this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future," as she has shown that she cannot be removed to her country of origin, and that the government has not properly identified or provided evidence of a third country that would accept her. Guzman Chavez, 594 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701); see also Cavieres Gomez, 817 F. Supp. 3d at 1011 ("Petitioner is not required to 'show the absence of any prospect of removal—no matter how unlikely or unforeseeable,' only that that he has 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'") (quoting Zadvydas, 533 U.S. at 701–02) (citation omitted). Accordingly, the Court finds that Ms. Klene's ongoing detention violates the INA and due process. [3]

### B. Challenges to Third Country Removal

Next, the Court turns to Petitioner's procedural claims regarding third country removal. Petitioner asserts that, in the event that Respondents seek to remove Petitioner to a third country, Petitioner's due process rights would be violated by Respondents' policy regarding third country removals. See Pet. at 15–16. Specifically, Petitioner asserts that her third country removal would be unlawful under the due process clause of the Fifth Amendment because she would not be afforded an opportunity to have her fear-based claims against heard by an immigration court. See id.; U.S. Const. amend. V.[4] Respondents again fail to offer any meaningful response to these challenges, entirely ignoring the matter in their responsive briefing. See generally Return. Despite

---

[3] Because the Court finds that Ms. Klene's detention violates the Fifth Amendment because removal is not reasonably foreseeable, it does not reach Ms. Klene's due process and procedural claims regarding her revocation of supervision, but reserves ruling on this ground if it becomes necessary. See Pet. at 13–15.

[4] Petitioner also challenges Respondents' third-country removal policy as arbitrary and capricious under the Administrative Procedure Act. Because the Court finds that third-country removal without adequate procedural protections violates Due Process, it need not reach this ground.

this failure to respond constituting consent to granting relief on this ground, the Court addresses the merits of Petitioner's argument.

A non-citizen detainee's right to notice and an opportunity to be heard before removal to a third country is well-supported by existing case law. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." Vilchez v. Holder, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing Lacsina Pangilinan v. Holder, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" Nguyen v. Scott, F. Supp. 3d at 727 (quoting Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing Mathews v. Eldridge, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Accordingly, this Court, and many others, have found that the lack of procedural protections afforded to non-citizens subject to third country removal violates due process. See Perez Canet, 2026 WL 1091763, at *4 (collecting cases); see also Lopez v. Blanche, No. 2:26-CV-00281-JAD-EJY, 2026 WL 1266226, at *5–6 (D. Nev. May 8, 2026) (finding that ICE's third-country removal process fails to comply with due process altogether). Thus, the Court holds that Petitioner has a due process right to receive meaningful notice and an opportunity to have her fear-based claims fully adjudicated before an immigration judge before DHS can deport her to a third country.

### C. Scope of Relief

Petitioner requests relief in the form of immediate release, as well as injunctive relief barring the government from re-detaining Petitioner absent changed circumstances and removing to Petitioner a third country until her fear-based claims have been fully adjudicated before an immigration judge (and any subsequent appeals). See Pet. at 17. When granting relief for a due process violation, a court may tailor the relief to the specific problem that gives rise to the violation. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

As it relates to Petitioner's continued detention, Zadvydas states that "if removal is not

reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. In addition, Zadvydas provides that the non-citizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [non-citizen] may no doubt be returned to custody upon a violation of those conditions." Id. at 700. Accordingly, the remedy for a successful Zadvydas claim is generally release of the habeas petitioner under conditions of supervision. Because the Court finds that Petitioner's continued detention—and any subsequent re-detention for the same removal order—by Respondents violates Petitioner's Fifth Amendment due process rights, pursuant to the framework set forth in Zadvydas, the Court finds the appropriate remedy is immediate release, subject to reasonable terms of supervision under 8 U.S.C. § 1231(a)(3).

Petitioner also requests that the Court prohibit Respondents from removing her to a third country without providing her and her counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. For the reasons discussed above, the Court grants this requested relief: Respondents are ordered to provide adequate notice to both Petitioner and her counsel of any third country removal and are enjoined from removing Petitioner to any third country without affording due process an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

## VI. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Petition (ECF No. 12) is **GRANTED**. Respondents must **RELEASE** Petitioner on **November 24, 2026** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order (ECF No. 13) is **DENIED** as moot.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property,

including any personal identification and employment authorization documents, **UPON HER RELEASE**.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country, without providing Petitioner with (1) adequate notice of intent to seek removal to a third country and (2) due process in the form of reopened immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **November 25, 2026**, confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** November 23, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**